IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PACHATTAR SINGH, GURPREET SINGH, and all others similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>DONALD TRUMP, President of the United States; KIRSTJEN NIELSEN, Secretary, Department of Homeland Security; RONALD D. VITIELLO, Acting Director, Immigration and Customs Enforcement; RICHARD L. MILLER, Field Office Director, Portland Field Office of Immigration and Customs Enforcement; JEFFERSON BEAUREGARD SESSIONS III, United States Attorney General; HUGH J. HURWITZ, Acting Director, Federal Bureau of Prisons; RICHARD IVES, Warden, FCI Sheridan, in their official capacities,<br><br>    Defendants. | Case No. _____<br><br>CLASS ACTION ALLEGATION COMPLAINT<br><br>RELIGIOUS FREEDOM RESTORATION ACT<br><br>DEMAND FOR JURY TRIAL |

## I. INTRODUCTION

1. Immigration authorities have contracted with the Federal Bureau of Prisons to detain refugees found at the United States border and to confine asylum-seeking refugees at the Federal Detention Center in Sheridan, Oregon, a prison facility neither designed for nor managed in a way to accommodate civil immigration detainees.

2. Many of these asylum-seeking refugees—and specifically the Plaintiff class members in this case—are adherents to the Sikh religion. The Sikhs fled their country of origin in order to escape the religious persecution they faced there.

3. The individuals were purely civil detainees, uncharged with any crime. They sought freedom from religious persecution when they traveled to the United States. When they arrived

Page 1 COMPLAINT

at the Federal Detention Center in Sheridan, however, they were subjected to unnecessary and unwarranted conditions that restricted and precluded these individuals from exercising even the basic tenets of the Sikh religion. They were not permitted to cover their heads and were punished when they did so. They were denied a diet conforming to their religious beliefs. They were denied access to their required religious texts, and denied access to a suitable location in which to conduct prayers and services. They were denied access to priests and Sikh religious leaders. They were shackled and strip searched. They were restricted to crowded cells for periods up to 23 hours per day and held behind barbed wire. They were given no access to outside recreation and cut off from communication with family members and lawyers. They were given inadequate medical care. They were held without explanation in their language of the expected length or process for resolving their detention.

4. As set forth in the following complaint, the Defendants acted in violation of the law by failing to comply with the Religious Freedom Restoration Act.

## II. JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702.

6. Venue lies in the District of Oregon under 28 U.S.C § 1391 because a substantial part of the events giving rise to the claims in this action took place in this District.

## III. PARTIES

7. Plaintiff Pachattar Singh is an asylum seeker who was detained at Sheridan from May 31, 2018 to June 18, 2018. He seeks asylum in the United States due to the persecution he faced in his home country for practicing the Sikh religion. As a practicing Sikh, Mr. Pachattar Singh's sincere religious beliefs dictate that his diet must be vegetarian and that he wear and keep with him Sikh religious articles of faith, including a turban and a kara (religious bracelet). In addition, his religious beliefs dictate that he pray at certain times of day in a setting that meets basic sanitary and respectful conditions and that he have access to certain religious texts. When

Page 2 COMPLAINT

not in use, these texts must be stored alone and under certain basic sanitary and respectful conditions. During his imprisonment at Sheridan, Mr. Singh was denied an adequate vegetarian diet that comports with his Sikh beliefs. He was not provided with a turban nor a kara. He was not allowed to cover his head. When he covered his head with a towel, he was forced to remove it. He was denied an adequately sanitary and respectful setting in which to conduct prayers. Defendants also restricted his access to religious texts and their required storage methods.

8. Plaintiff Gurpreet Singh is an asylum seeker who was detained at Sheridan from May 31, 2018, to September 20, 2018. He seeks asylum in the United States due to the persecution he faced in his home country for practicing the Sikh religion. As a practicing Sikh, Mr. Gurpreet Singh's sincere religious beliefs dictate that his diet must be vegetarian and that he wear and keep with him Sikh religious articles of faith, including a turban and a kara (religious bracelet). In addition, his religious beliefs dictate that he pray at certain times of day in a setting that meets basic sanitary and respectful conditions and that he have access to certain religious texts. When not in use, these texts must be stored alone and under certain basic sanitary and respectful conditions. During his imprisonment at Sheridan, Mr. Singh was denied an adequate vegetarian diet that comports with his Sikh beliefs. He was not provided with a turban nor a kara. When he covered his head with any form of cloth, the Defendants forcefully removed the cloth. He was denied an adequately sanitary and respectful setting in which to conduct prayers. Defendants also restricted his access to religious texts and their required storage methods.

9. Defendant Donald Trump is the President of the United States. He is ultimately responsible for the immigration policies as set out and executed by the Department of Homeland Security (DHS) and the Federal Bureau of Prisons (BOP). He is responsible for the so-call "zero tolerance" immigration policy that has prompted the violation of the religious rights of the plaintiffs. He is named in his official capacity.

10. Defendant Kirstjen Nielsen is the Secretary of the Department of Homeland Security (DHS), an agency of the United States. Secretary Nielsen is ultimately responsible for the

Page 3 COMPLAINT

actions of DHS and the entities within its purview, including U.S. Immigrations and Customs Enforcement (ICE). She is the legal custodian of immigration detainees incarcerated at Sheridan. She is named in her official capacity.

11. Defendant Ronald D. Vitiello is the Acting Director of ICE, a bureau within DHS. ICE is responsible for the apprehension, detention, and removal of noncitizens from the United States. He is the legal custodian of immigration detainees incarcerated at Sheridan. He is named in his official capacity.

12. Defendant Richard L. Miller is the Field Office Director for the Portland Field Office of ICE. Director Miller is responsible for the enforcement of the immigration laws within this district, and for ensuring that ICE officials follow the agency's policies and procedures. He is the legal custodian of immigration detainees incarcerated at Sheridan. He is named in his official capacity.

13. Defendant Jefferson Beauregard Sessions III is the Attorney General of the United States and the most senior official in the U.S. Department of Justice (DOJ). The Attorney General is ultimately responsible for the actions of the Bureau of Prisons (BOP) and for the nation's enforcement of its immigration and asylum laws. Mr. Sessions has implemented the so-called "zero tolerance" immigration policy of the current presidential administration that has prompted the violation of the religious rights of the plaintiffs. He is named in his official capacity.

14. Defendant Hugh J. Hurwitz is the Acting Director of BOP. He is responsible for the actions, policies and practices of BOP and for the operation of Sheridan. He is named in his official capacity.

15. Defendant Richard Ives is the Warden of Sheridan FCI in Sheridan, Oregon. He is the custodian of civil immigration detainees incarcerated at Sheridan. He is named in his official capacity.

## IV. FACTUAL ALLEGATIONS

16. FCI Sheridan (Sheridan) is a medium-security Federal Correctional Institution with an adjacent minimum-security satellite camp. The facility also has a Federal Detention Center (FDC) designed to hold three specific types of detainees: (1) individuals who are ordered detained pending trial or pretrial detainees; (2) individuals who have been found guilty of federal crimes but are not yet sentenced; and (3) individuals who have been convicted and sentenced but are awaiting designation to a federal prison. Sheridan is operated by the BOP.

17. On April 6, 2018, Defendant Sessions announced a "zero tolerance" policy requiring punitive responses to immigrants unlawfully crossing United States borders. The policy aimed to deter persons from other countries from coming to the United States. The policy included the intention to penalize immigrants seeking asylum.

18. Pursuant to the zero-tolerance policy, in early 2018, Defendants began mass placement of asylum-seekers and other immigration detainees in federal prisons.

19. On May 31, 2018, Defendants transferred 123 detainees to the FDC at Sheridan, all of whom were seeking asylum. Plaintiffs were among those asylum-seeking detainees.

20. In June of 2018, several asylum-seeking detainees in custody at FCI Sheridan contacted the Oregon Federal Public Defender and asked for assistance.

21. When attorneys and personnel from the Federal Public Defender traveled to Sheridan to meet with the detainees, Sheridan staff initially told them that the immigration detainees were not allowed to have lawyers. Federal Public Defender attorneys and personnel were escorted out of the visiting room, though they were permitted to return later the same day.

22. While detained at FCI Sheridan, asylum-seeking detainees—plaintiffs included—were subjected to conditions equal to or more punitive than those experienced by convicted felons serving sentences.

23. The Sikh faith is the world's fifth largest organized religion, with over 26 million adherents worldwide and over 500,000 Sikhs residing in the United States. The tenets of the

Page 5 COMPLAINT

Sikh faith include devotion to God, truthful living, and service to humanity. Sikhs wear five articles of faith, known as the Five K's: *kesh* (maintaining hair unshorn and covered with a turban), *kangha* (wooden comb); *kara* (steel bracelet), *kacha* (undergarment), and *kirpan* (emblem of justice). The five articles of faith signify an individual's commitment to the Sikh faith and form an external uniform that unifies and binds Sikhs to the beliefs of the religion. Unlike some faiths, where only the clergy are in uniform, all Sikhs wear external articles of faith.

24. Wearing a turban is a mandatory article of the Sikh faith. According to the individual religious practice of many Sikhs, a turban should always cover their head, though individual religious practices may differ according to the sincerely held beliefs of the individual adherent. Turbans are considered a precious gift, and many wash their hands before they begin to tie it. A Sikh turban is not just a piece of cloth; it is an integral part of Sikhs' identity and their expression of faith. For centuries, forcibly removing a Sikh's turban, or cutting a Sikh's hair has symbolized denying that person the right to belong to the Sikh faith, and has been considered a humiliating and hurtful injury. Other head coverings are not adequate or acceptable substitutes.

25. Other requirements of Sikh religious practices include prayer opportunities at set times (including in the morning before breakfast), group prayer in an appropriately respectful location (not in a room with a toilet, or where other activities are simultaneously occurring, or where hair is cut), appropriate washing facilities prior to prayer, prayer without wearing shoes, the option of vegetarian meals, and storage location in a clean and respectful location for *gutkas* (prayer books).

26. Many detainees—plaintiffs included—were and are practicing Sikhs. As such, they are required by their sincere beliefs to wear certain items of religious significance including a kara (bracelet) and turban. They must adhere to a vegetarian diet. They must also observe strict practices regarding prayer that dictate a sanitary and respectful setting and time for prayer services. In addition, they must have access to their religious texts (gutkas), and those texts must be stored under sanitary and respectful conditions.

Page 6 COMPLAINT

27. While detained at Sheridan, asylum-seeking detainees of the Sikh faith were denied a vegetarian diet, and many were forced to eat meat to avoid malnutrition and starvation. They were denied karas and turbans or head coverings of any kind, despite the fact that a local Sikh temple had contacted Defendants and sought to make these articles available for distribution to Sikh detainees. When plaintiffs covered their heads with anything, they were forced to remove it. They were told to pray in their cells, but their religious beliefs do not allow them to pray in a room with a toilet. Later they were told to pray in the barbershop of the prison, but that room was equally unsanitary in that the floor was littered with discarded and residual hair and beard trimmings from inmate trips to the barber shop. They were denied access to their religious texts and were not permitted to store those texts under the required conditions. They were required to store their religious texts in the prison's break room/TV room, where all inmates could come and go. This violated the requirements of their faith.

28. On June 15, June 29, and July 9, 2018, the Federal Public Defender wrote to the Warden of Sheridan and to ICE, raising concerns about the above restraints on religious practices, among other things, and requesting remedial measures.

29. While the BOP made limited improvements in the general housing and nutritional conditions of the detainees, the restrictions on the religious practices of the Sikh detainees continued and continued until the last Sikh detainee was released on September 20, 2018.

30. Defendants' refusal to meet Plaintiff's religious dietary needs, and Defendants' restrictions on religious items, texts, and prayer services severely impeded and outright prevented Plaintiffs from exercising these sincerely held religious beliefs and forced them to violate their religious beliefs in many instances. Plaintiffs' inability to freely exercise these religious beliefs was a cause of immeasurable distress for them.

31. Defendants' conduct vis-à-vis the Plaintiffs' religious practices does not comply with either ICE or the BOP's written policies which expressly permit the very sort of religious practices that Plaintiffs sought to engage in.

Page 7 COMPLAINT

## V. INJUNCTIVE RELIEF

32. Plaintiffs re-allege and incorporate by reference paragraphs 1-31 of this Complaint as if fully set out herein.

33. Plaintiffs and the putative class are entitled to preliminary and permanent injunctive relief.

34. Defendants have acted, and threaten to act, to deprive Plaintiffs, and the others they seek to represent, of their constitutional and statutory rights.

35. Plaintiffs and those similarly situated have suffered irreparable physical and psychological injury and the loss of fundamental due-process and religious-exercise rights. They have been subjected to serious risk of irreparable harm as the result of imprisonment at Sheridan.

36. Defendants have been and are aware of the conditions and deprivations complained of herein. In the alternative, Defendants have acted with deliberate indifference regarding the conduct and conditions described herein.

37. Plaintiffs and putative class members have no plain, adequate, or speedy remedy at law.

## VI. CLASS ACTION ALLEGATIONS

38. Plaintiffs re-allege and incorporate by reference paragraphs 1-37 of this Complaint as if fully set out herein.

39. Plaintiffs bring this action on behalf of themselves and all other persons who are similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1), and 23(b)(2), and in compliance with Local Rule 23.

40. With respect to all claims, Plaintiffs seek to represent a class consisting of: "All individuals who practice the Sikh religion who are now, or in the future will be, in the legal custody of the U.S. Immigrations and Customs Enforcement ("ICE") and housed at FCI Sheridan (including the Federal Detention Center at Sheridan)."

41. **Numerosity.** The putative Class is so numerous that joinder of all members would be impracticable. The precise number of the Class is difficult to ascertain, as Defendants do not track or report detainees' religious beliefs, but upon information and belief, Plaintiffs estimate that it is at least 50.  Moreover, detainees could continue to arrive and be released from Sheridan on an ongoing basis, making joinder of all members not just impracticable but impossible.

42. **Existence and predominance of common questions of law or fact.** There are multiple questions of law and fact common to the putative Class, including:

    a. The sufficiency of access to religious services or other adequate opportunities for group prayer, congregate worship, or consultation with clergy for civil detainees at Sheridan;

    b. The sufficiency of access to meals that comport with detainees' religious beliefs for civil detainees at Sheridan;

    c. The sufficiency of access to the possession and wearing of religious headwear, jewelry, and other religious items for civil detainees at Sheridan;

    d. The sufficiency of access to religious texts for civil detainees at Sheridan;

    e. Whether deprivation of the aforementioned impermissibly infringes on detainees' religious exercise; and

    f. Whether deprivation of the aforementioned results in constitutional or statutory violations.

43. **Typicality.** The claims of the Plaintiffs are typical of the claims of the putative Class. Each of the Plaintiffs, like all putative class members, was a civil detainee at Sheridan.  Their claims arise from the same policies, practices, and courses of conduct, and their claims are based on the same theory of law.

44. **Adequate Representation.** All of the Plaintiffs will fairly and adequately represent the interests of all members of the putative Class because they seek relief on behalf of the class they represent as a whole and have no interest antagonistic to other members of the class.

Page 9 COMPLAINT

45. Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(A) because prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for defendants.

46. Class certification is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(1)(B) because prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair their ability to protect their interests.

## VII. CLAIM FOR RELIEF

**(Violation of the Religious Freedom Restoration Act, 42 U.S.C § 2000bb, et seq.)**

47. Plaintiffs re-allege and incorporate by reference paragraphs 1-46 of this Complaint as if fully set out herein.

48. Defendants' policies and practices restricting and impeding Plaintiffs' and the other detainees' religious exercise, as described above, substantially burden Plaintiffs' and the other detainees' exercise of their sincerely held religious beliefs. Because of Defendants' conduct, Plaintiffs and the other detainees have been severely impeded or prevented outright from attending religious services, engaging in congregate worship and group prayer, consulting with clergy and religious leaders, following religious requirements for their diet, wearing religious headgear and religiously significant jewelry, possessing other religious items, and accessing religious texts for reading and religious study.  Past harm has already occurred, and unless this Court intervenes, Plaintiffs, class members, and future detainees will be forced to abandon, or significantly limit, their religious practices and violate their sincerely held religious beliefs throughout their entire imprisonment at Sheridan.

49. Under RFRA, Defendants may not impose these substantial burdens on Plaintiffs and the other detainees unless they can demonstrate that doing so is the least restrictive means of furthering a compelling governmental interest.

50. Defendants have no compelling interest in treating Plaintiffs and the other detainees in this manner.

51. Even if Defendants could identify a compelling interest to support their policies and practices pertaining to detainees' religious exercise, they have not used the least restrictive means to further that interest. The BOP's Program Statement on Religious Beliefs and Practices, Sheridan's Inmate Handbook, and ICE's Religious Practices and Policy all represent less restrictive means that could be used by Defendants. To eliminate the substantial burdens on Plaintiffs' and the other detainees' religious exercise, Defendants could also simply release Plaintiffs and the other detainees from imprisonment at Sheridan, in the same manner that civil detainees have previously been treated.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to exercise its federal question jurisdiction over this actual controversy and:

(a) certify the Class as proposed above, appoint the Named Plaintiffs to serve as representatives of the Class, and appoint undersigned counsel to represent the Class;

(b) enter an order preliminarily and permanently enjoining Defendants from imprisoning Plaintiffs, or any member of the Class, at Sheridan, and set a date certain by which all such detainees must be removed therefrom;

(c) enter an order preliminarily and permanently enjoining Defendants from depriving Plaintiffs of their constitutional and statutory rights to exercise their freedom of religion;

(e) award Plaintiffs their attorneys' fees and costs; and

Page 11 COMPLAINT

(f) enter such other and further relief as the Court deems just and proper, including but not limited to an award of monetary damages for Plaintiffs' injuries.

DATED this 1st day of November 2018.

_/s/ Matthew McHenry_
Matthew McHenry, OSB No. 043571
Attorneys for Plaintiffs

_/s/ Tiffany A. Harris_
Tiffany A. Harris, OSB No. 023187

Page 12 COMPLAINT